YOUNG, J.
In this case we consider whether a “design defect” claim is cognizable under the public building exception to governmental immunity, MCL 691.1406. The plain language of the public building exception imposes a duty only to “repair and maintain” a public building. In the absence of any additional language addressing design defects, we hold that the public building exception to governmental immunity does not permit a cause of action premised upon an alleged design defect. We disavow any dicta to the contrary in our earlier cases and overrule any cases, such as Sewell *493 v Southfield Pub Schools[1] and Williamson v Dep’t of Mental Health,[2] that can be construed to stand for the proposition that design defects fall within the public building exception. However, because plaintiffs[3] complaint alternatively alleged that defendant Michigan Department of Transportation (MDOT) failed to repair and maintain the public building, we remand to the Court of Claims to determine whether plaintiffs suit may proceed with respect to these allegations.[4] Accordingly, we affirm the Court of Appeals reversal of summary disposition in favor of MDOT, reverse the Court of Appeals holding that design defects are actionable under the public building exception, and remand the case to the Court of Claims for further proceedings consistent with this decision.
i. facts and procedural history
Plaintiff Karen Renny visited a rest area in Roscommon County, Michigan, in January 2000. She alleged that while leaving the rest area building, she slipped on a patch of snow and ice on the sidewalk in front of the doorway and suffered serious injuries to her right wrist. Plaintiff sued MDOT, alleging that her injuries resulted from a defective condition of the rest area building. According to plaintiff, “by [MDOT] designing, con *494 structing, keeping and/or maintaining” the rest area in a defective condition, melted snow and ice accumulated on the sidewalks in front of the entranceway and created a hazardous, slippery surface.[5] Plaintiff attributed the accumulated snow and ice, in part, to MDOT’s failure to install and maintain gutters and downspouts around the roof of the building. Plaintiff maintained that gutters and downspouts would have safely channeled the snow and ice that melted off the roof away from the sidewalks. Moreover, plaintiff alleged that MDOT had actual or constructive notice of these defects for more than 90 days before the accident, but failed to remedy them. MDOT moved for summary disposition, which the Court of Claims granted on the basis of governmental immunity.
In a published per curiam decision, the Court of Appeals reversed the Court of Claims.[6] The panel held that plaintiffs claim was cognizable as a design defect claim under the public building exception. It further concluded that plaintiffs injured wrist was directly attributable to a dangerous or defective condition of the building itself even though the dangerous condition of snow and ice existed outside the building.
This Court granted MDOT’s application for leave to appeal.[7]
*495 II. standard of review
This Court reviews de novo motions for summary disposition.[8] Questions of statutory interpretation are questions of law that are also reviewed de novo by this Court.[9] This Court approaches the task of statutory interpretation by seeking to give effect to the Legislature’s intent as expressed in the statutory language.[10] “When the language of a statute is unambiguous, the Legislature’s intent is clear and judicial construction is neither necessary nor permitted.”[11]
III. ANALYSIS
This case pivots on the proper interpretation of the public building exception to governmental immunity. MCL 691.1406 states, in pertinent part, that
[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. [Emphasis added.]
This Court has held that in order for a plaintiff to avoid governmental immunity under the public build *496 ing exception, the plaintiff must prove that (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable amount of time.[12] In this case, the parties dispute whether plaintiff has satisfied the third element, that is, whether plaintiff was injured by a dangerous or defective condition of the rest area building.
Plaintiff maintains that the dangerous or defective condition of the rest area building arose from a design defect, and that a design defect claim is cognizable under the public building exception.[13] She rests her argument on certain language from Bush v Oscoda Area Schools[14] that we have reiterated in Reardon v Dep’t of Mental Health[15] and other subsequent cases.[16] In Bush, the plaintiff, the mother of an injured student, sued the student’s school and school officials after a jug of wood alcohol exploded in a non-laboratory classroom temporarily used to hold science class. Concluding that the plaintiff stated a claim against the defendants under the public building exception, this Court opined that
[t]he defective building provision is structurally similar to the defective highway provisions. It states a duty, “repair *497 and maintain”, and in providing a cause of action extends it to “a dangerous or defective condition of a building”. We construe the defective building provision as we have the defective highway provision. Governmental agencies are subject to liability for a dangerous or defective condition of a public building without regard to whether it arises out of a failure to repair and maintain.
As in the highway cases, a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices. [17]
In Reardon, this Court quoted Bush approvingly to make the point that the public building exception applies only where an injury “is occasioned by a physical defect or dangerous condition of the building itself”[18] rather than where an injury merely occurs on the premises. In its discussion of the governmental agency’s duty under the public building exception, the Reardon Court opined that
[t]he first sentence [of the public building exception] imposes upon governmental agencies the duty to “repair and maintain public buildings under their control....” In Bush v Oscoda Area Schools, 405 Mich 716; 275 NW2d 268 (1979), we held that this duty is not strictly limited to the repair or maintenance of public buildings. Instead, we held that “a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices.” Id. at 730. We reiterate this proposition, as the holding in Bush is entirely consistent with today’s conclusion that the injury must be occasioned by the dangerous or defective condition of the building itself. As long as the danger of injury is presented by a physical condition of the building, it little matters that the condition arose because of improper design, faulty construction, or absence of safety devices. However, while the public building exception is not strictly limited to failures of repair or *498 maintenance, the Legislature’s choice of those terms to define the governmental duty is indicative of its intention regarding the scope of the exception. The duty to repair and maintain a premises clearly relates to the physical condition of the premises.[19]
Citing Bush and Reardon, this Court has stated elsewhere that a defective design claim falls within the public building exception.[20] Plaintiff rests her design defect claim on this line of cases.
MDOT responds that this Court has never squarely held that a design defect is cognizable under the public building exception. According to MDOT, Reardon's discussion of Bush and design defect claims was obiter dictum. Reardon considered and rejected the notion that the public building exception extended to injuries that occur in a public building but were not occasioned by a physical condition of the building itself. It did not pass on the merits of a design defect claim.
Moreover, MDOT argues that Reardon mischaracterized Bush as holding that design defects fall within the public building exception, when Bush in fact only considered the intended use of the classroom and the lack of safety devices in its holding. Thus, MDOT argues, it was unnecessary for the Bush Court to opine on the propriety of a design defect claim and its statement on that question was dictum. Finally, MDOT points out, this Court more recently has openly questioned whether a design defect claim fits within the public building exception. In de Sanchez v Dep’t of Mental Health,[21] we stated that
[d]espite the oft-cited proposition that a public building may be dangerous or defective because of its improper design, the issue whether a design defect may actually *499 constitute a defect in a public building sufficient to invoke the public building exception has caused this Court considerable difficulty. Nonetheless, that issue is not before this Court.
In short, MDOT argues, any support provided by the caselaw on which plaintiff heavily relies is illusory.
More specifically, MDOT contends that plaintiffs reliance on Bush is misplaced because this Court has since dismantled the reasoning underpinning Bush. The majority in Bush relied heavily on the structural and linguistic similarities between the highway exception and the public building exception. Therefore, because our caselaw held that a design defect claim fell within the highway exception, the Bush majority placed the same judicial gloss on the public building exception. Beginning with Nawrocki v Macomb Co Rd Comm,[22] this Court returned to a more textually faithful interpretation of the highway exception. This trend continued in Hanson v Mecosta Co Rd Comm,[23] where this Court disavowed the line of highway exception cases that recognized a design defect claim and held that “the highway exception does not include a duty to design, or to correct defects arising from the original design or construction of highways.” MDOT reasons syllogistically, then, that this Court, since deciding Bush, has recognized that the highway exception does not allow for a design defect claim. It was vital to the Bush *500 majority’s logic that the highway exception permitted design defect claims. Now that this central premise has been repudiated, there is no reason for a similarly erroneous statutory construction to persist with regard to the public building exception.
With respect to the plain language of the statute, MDOT notes that plaintiffs position is entirely at odds with the statute itself. The statutory language refers only to the governmental agency’s duty to “repair and maintain public buildings,” and does not refer to any duty to design a public building. Therefore, to hold that the language of the statute includes a design defect claim is inconsistent with its plain language.
While plaintiff relies almost exclusively on caselaw, MDOT largely appeals to the statutory language. In order to decide an issue of statutory construction, we must first resort to the plain language of the public building exception to determine the Legislature’s intent.[24] We agree with MDOT that this provision clearly does not support a design defect claim. The first sentence of MCL 691.1406 states that “ [governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public.” This sentence unequivocally establishes the duty of a governmental agency to “repair and maintain” public buildings. Neither the term “repair” nor the term “maintain,” which we construe according to their common usage, encompasses a duty to design or redesign the public building in a particular manner. “Design” is defined as “to conceive; invent; contrive.”[25] By contrast, “repair” means “to restore to *501 sound condition after damage or injury.”[26] Similarly, “maintain” means “to keep up” or “to preserve.”[27] Central to the definitions of “repair” and “maintain” is the notion of restoring or returning something, in this case a public building, to a prior state or condition. “Design” refers to the initial conception of the building, rather than its restoration. “Design” and “repair and maintain,” then, are unmistakably disparate concepts, and the Legislature’s sole use of “repair and maintain” unambiguously indicates that it did not intend to include design defect claims within the scope of the public building exception.
The second sentence of MCL 691.1406, which imposes habihty on governmental agencies “for bodily injury and property damage resulting from a dangerous or defective condition of a pubhc building,” does not expand the duty beyond the repair and maintenance of a pubhc building. The phrase imposes habihty where the “dangerous or defective condition of a pubhc building” arises out of the governmental agency’s failure to repair and maintain that building. It is not suggestive of an additional duty beyond repair and maintenance. There is no reason to suspect that the Legislature intended to impose a duty to prevent “dangerous or defective condition[s]” in pubhc buildings in a manner whohy unrelated to the obhgation clearly stated in the first sentence.[28]
*502 Contrary to the dissent’s suggestion that Bush represents an unbroken precedent, Bush has been consistently undermined by subsequent decisions of this Court. First, Bush was succeeded by Ross v Consumers Power Co (On Rehearing),[29] a case that fundamentally altered the way we construe the governmental immunity statute. Second, we agree with MDOT that Hanson collapsed the “logic” in Bush supporting a design defect claim. Finally, we also note that the propriety of a claim under the public building exception premised on a lack of safety devices is also undermined by Fane v Detroit Library Comm[30] — a decision authored by the dissent. In Fane, we held under the facts of that case that an elevated terrace was “of a public building.” We emphasized that the public building exception only refers to injuries resulting from dangerous or defective conditions “of a public building” and that a fixtures analysis is useful in determining whether the condition giving rise to the injury is “of a public building.” In light of Fane, we fail to see how injuries from an exploding jug could have resulted from a dangerous or defective condition “of a public building” or could survive a fixtures analysis under Fane.
Because we conclude that the statutory language is unambiguous and imposes a duty only to repair and maintain a public building, we must reconsider our earlier cases suggesting that a design defect claim is *503 cognizable under the public building exception.[31] As we said in de Sanchez, it is an oft-cited proposition that design defect claims fall within the public building exception. Yet there are few instances where this Court or the Court of Appeals has endorsed a design defect claim. We agree with MDOT that Bush involved an alleged lack of safety devices and was not a design defect case, so its discussion of the latter was dictum. Although at one point the Bush majority stated that “[p]laintiff has alleged that the improper design of the classroom and absence of safety devices rendered it unsafe as a science classroom,” elsewhere it opined that “[p]laintiff s defective building theory is based on lack of safety devices.”[32] We also agree with MDOT that Reardon was not a design defect case and its discussion of design defect claims was dictum. Rather, Reardon held that the public building exception “impose[s] a duty to maintain safe public buildings, not necessarily safety in public buildings.”[33]
In subsequent cases, this Court has not endorsed a plaintiffs design defect claim. In Hickey, supra, responding to the plaintiffs argument that the alleged improper design of a Michigan State University Department of Public Safety holding cell caused the decedent *504 to hang himself, this Court stated that “ [although we agree that a claim of improper design may allow the public building exception to be applied, that outcome is not required”[34] because the connection between the alleged design defect and the injury was too tenuous to invoke the exception. So, this Court did not pass judgment on the plaintiffs design defect claim. In de Sanchez, supra, where the decedent hung himself in a restroom, this Court expressly stated that the plaintiffs design defect claim was not before the Court.[35] In Johnson, supra, another suicide case, a majority of this Court concluded that the public building exception was applicable because the police station holding cell was defective given its intended use as a suicide-deterrent cell. This Court did not focus on a design defect claim.
In addition to the Court of Appeals decision in this case, we are aware of only two cases where a design defect claim was recognized implicitly or explicitly by a court. In Williamson, supra, the Court of Appeals affirmed the Court of Claims determination that the plaintiff alleged a design defect or absence of safety features that was a proximate cause of the decedent’s death. The decedent, a mildly retarded, epileptic teenager, drowned while taking an unsupervised bath at a Department of Mental Health residential treatment facility. The Court of Claims found that the plaintiff proved by a preponderance of the evidence that the improper design of the shower and bathing facilities constituted a dangerous or defective condition of the public building that the defendant had a duty to alter or modify with safety devices.
And, in Sewell, supra, this Court reversed summary disposition in favor of the defendant Southfield Public *505 Schools, where the minor plaintiff suffered a spinal cord injury after diving into a shallow pool at the high school, holding that the plaintiff created a question of fact regarding the existence of an actual defect in the pool. We examined the intended use of the pool, and held that diving, and not just swimming, was an intended use. Second, we held that the plaintiffs’ allegations of faulty construction and improper design sufficiently alleged an actual defect. These defects included an uneven pool floor and mismarked depth markers. The plaintiffs’ experts opined about the poor design and layout of the pool, claiming that there was a design failure. We disagreed with the lower courts that this was merely a case of improper supervision.
In light of our foregoing analysis of the public building exception, we disavow the dicta in earlier decisions from this Court such as in Bush and Reardon, and any dicta from Court of Appeals decisions, suggesting that a design defect claim falls within the plain language of the provision. Also, we overrule any cases such as Sewell and Williamson that can be construed to stand for the proposition that design defects fall within the public building exception.[36]
*506 IV APPLICATION
Returning to the facts of this case, plaintiff alleges that she was injured by a dangerous or defective condition of the rest area building. She argues that the absence of gutters and downspouts, among other defects in the building, permitted an unnatural accumulation of snow and ice on the sidewalks in front of an entranceway and created slippery, hazardous conditions for members of the public. Consistent with today’s decision, to the extent that plaintiffs claim is premised on a design defect of a public building, it is barred by governmental immunity. However, plaintiff also alleged that MDOT failed to repair and maintain the rest area building.[37] Indeed, there is record evidence suggesting that the rest area building was once equipped with *507 gutters and downspouts. Although we do not pass judgment on the legal viability of plaintiffs claim or whether her claim may ultimately proceed to trial, plaintiff sufficiently pleaded in avoidance of governmental immunity. Accordingly, we remand to the Court of Claims to determine whether plaintiffs suit may proceed with respect to the alleged failure to repair and maintain the public building.
V CONCLUSION
We hold that design defect claims are not cognizable under the unambiguous, plain language of the public building exception, which refers only to the governmental agency’s duty to “repair and maintain” the public building. Therefore, while we affirm the Court of Appeals reversal of summary disposition in favor of MDOT, we reverse the Court of Appeals holding that design defects are actionable under the public building exception, and we remand the case to the Court of Claims for further proceedings consistent with this decision.
Taylor, C.J., and CORRIGAN and Markman, JJ., concurred with Young, J.

 456 Mich 670; 576 NW2d 153 (1998).

 176 Mich App 752; 440 NW2d 97 (1989).

 Coplaintiff Charles Renny filed a claim for loss of consortium, which is derivative of his wife’s claim. Therefore, we will refer to plaintiff singularly.

 We do not pass judgment on the legal viability of plaintiffs allegations with respect to a failure to maintain and repair the rest area building, nor should this opinion be construed as holding that plaintiff is entitled to proceed to trial. We simply observe that plaintiff in her complaint minimally pleaded in avoidance of governmental immunity, and therefore we remand for further proceedings on that basis. See part IV of this opinion.

 Plaintiff also sued the Roscommon County Road Commission and Roscommon Township in a separate circuit court action that was consolidated with this case at the trial court level. Both parties were dismissed, and neither party is participating in this appeal.

 Renny v Dep’t of Transportation, 270 Mich App 318; 716 NW2d 1 (2006).

 477 Mich 958 (2006). In our order granting leave, we asked the parties to address three questions: (1) whether the Court of Appeals correctly characterized the alleged dangerous or defective condition in this case as a design defect; (2) whether the public building exception, which obligates a governmental agency “to repair and maintain public buildings,” permits a party to bring a design defect claim; and (3) whether the Court *495 of Appeals conclusion that the icy sidewalk was not a transitory condition is contrary to this Court’s decision in Wade v Dep’t of Corrections, 439 Mich 158; 483 NW2d 26 (1992).

 Grimes v Dep’t of Transportation, 475 Mich 72, 76; 715 NW2d 275 (2006).

 Id.

 Griffith v State Farm Mut Automobile Ins Co, 472 Mich 521, 526; 697 NW2d 895 (2005).

 Id.

 de Sanchez v Dep’t of Mental Health, 467 Mich 231, 236; 651 NW2d 59 (2002).

 Plaintiff argues alternatively that the defective condition of the rest area building arose from a failure to maintain gutters around the building.

 405 Mich 716; 275 NW2d 268 (1979).

 430 Mich 398; 424 NW2d 248 (1988).

 See, e.g., Johnson v Detroit, 457 Mich 695; 579 NW2d 895 (1998); Sewell, supra; Hickey v Zezulka (On Resubmission), 439 Mich 408; 487 NW2d 106 (1992); see also Williamson, supra.

17 Bush, 405 Mich at 730.

 Reardon, 430 Mich at 400.

19 Id. at 409-410.

 See, e.g., Johnson, supra; Sewell, supra; Hickey,s supra.

 455 Mich 83, 96; 565 NW2d 358 (1997).

 463 Mich 143; 615 NW2d 702 (2000).

 465 Mich 492, 502; 638 NW2d 396 (2002). The Court of Appeals also signaled a more principled approach to the highway exception. See, e.g., Wechsler v Wayne Co Rd Comm, 215 Mich App 579, 587-588; 546 NW2d 690 (1996) (“The Legislature thus did not purport to demand of governmental agencies having jurisdiction of highways that they improve or enhance existing highways____The only statutory requirement and the only mandate that, if ignored, can form the basis for tort liability is to ‘maintain’ the highway in reasonable repair.”).

 Echelon Homes, LLC v Carter Lumber Co, 472 Mich 192, 196; 694 NW2d 544 (2005).

 The American Heritage Dictionary of the English Language, New College Edition (1978).

 Id.

 Id.

 According to the dissent, it “defies logic” that a governmental agency would have a duty to repair and maintain a pubhc building but would not be liable if a public building could have been more safely designed. Such a statement fails to recognize that the very purpose of governmental immunity is to limit the government’s exposure to habihty. Clearly, this is precisely what the Legislature intended to convey with its dehberately chosen words. It is entirely logical that it would have chosen not to expose a governmental agency to habihty for a design defect. The duty to repair *502 and maintain a public building does not impose an unforeseeable and potentially significant liability on governmental agencies. The same cannot be said of a duty to design a safe public building, which would be measured in hindsight by courts that are ill-equipped to consider the budgetary and architectural trade-offs involved in the construction of any structure. Thus, far from being illogical, a narrowly tailored duty of repair and maintenance is entirely consistent with the government’s interest in limiting its liability.

 420 Mich 567; 363 NW2d 641 (1984).

 465 Mich 68; 631 NW2d 678 (2001).

 The dissent claims that the Legislature acquiesced in Bush’s erroneous interpretation of the public building exception. That this Court highly disfavors the doctrine of legislative acquiescence has been elsewhere stated. See, e.g., Karaczewski v Farbman Stein & Co, 478 Mich 28; 732 NW2d 56 (2007); Grimes, 475 Mich at 84; Robinson v Detroit, 462 Mich 439, 465; 613 NW2d 307 (2000); Donajkowski v Alpena Power Co, 460 Mich 243, 261; 596 NW2d 574 (1999). Thus, for the reasons stated in these opinions, the dissent’s reliance on this spurious rule is a nonstarter.

 Bush, 405 Mich at 730-731, 728 n 7.

 Reardon, 430 Mich at 415 (emphasis in original). Thus, the dissent attributes too much significance to the Reardon Court’s recitation of the design defect language from Bush and certainly is incorrect in suggesting that we are overturning Reardon.

 Hickey, 439 Mich at 423 (opinion by Brickley, J.).

 de Sanchez, 455 Mich at 96.

 To the extent that it overrules Sewell, our decision today does not contravene the policy considerations that underpin the doctrine of stare decisis. See Robinson, supra. First, without question, Sewell relied on dicta originating in Bush that was clearly inconsistent with the plain language of the statute. This explains why the dissent treats the duty of safe design as “implicit” in the statute rather than “explicit” because that duty is nowhere to be found in the actual words. Post at 509, 515. Therefore, we are faithfully discharging our judicial responsibility by accurately interpreting and applying the statutory language in this case. Also, we are largely disavowing dicta rather than overruling prior established cases. We will not elevate dicta above the plain language of a statute. See Hanson, 465 Mich at 501 n 7. And, by repudiating dicta that is patently contrary to the statutory language, we are simply enforcing the plainly expressed intent of the Legislature.
*506 Second, the practical workability of a design defect claim has elsewhere been called into question by this Court. A majority of this Court (which included the dissenting justice) noted that “whether a design defect may actually constitute a defect in a public building sufficient to invoke the public building exception has caused this Court considerable difficulty.” de Sanchez, 455 Mich at 96. Third, turning to the question of reliance interests, it is hard to imagine that overruling Sewell and precluding design defect claims will be so jarring as to create practical, real-world dislocations. Robinson, 462 Mich at 466-467. Finally, contrary to what the dissent claims, there have been substantial changes in the law since Bush was decided, which undercuts the notion that Bush has functioned as an integral part of our jurisprudence for 28 years. As we discussed earlier, subsequent cases from this Court have undermined Bush and its progeny, including Sewell. See Fane, supra; Hanson, supra; Nawrocki, supra; Ross, supra. The dissent’s correct assertion that Hanson dealt with a different portion of the governmental tort liability act and its belief that Hanson was wrongly decided misses the larger point that the law of governmental immunity has significantly changed since Bush was decided.

 For instance, her complaint alleged:
11. This accumulation of ice and snow occurred as a result of the defective condition of the roof of the building located immediately above this entrance/exit way to the building. By way of illustration, not limitation, these defective conditions include the *507 failure to install and maintain gutters and. downspouts to redirect melting snow and ice on the roof above the entrance/exit away from the walkway.
19. Defendant breached this statutory duty [MCL 691.1406] by designing, constructing, keeping and/or maintaining the restroom building described herein which had dangerous and/or defective conditions....