*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHERRI GLEZMAN and TERRY GLEZMAN,

        Plaintiffs-Appellees,

UNPUBLISHED
June 11, 2019

v

TRAVERSE CITY AREA PUBLIC SCHOOLS,

        Defendant-Appellant.

No. 344477
Grand Traverse Circuit Court
LC No. 2017-032341-NO

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

In this negligence action, defendant appeals as of right from the trial court's order denying its motion for summary disposition, concluding that defendant was not entitled to assert governmental immunity. We affirm.

## I. BACKGROUND

Defendant is a school district operating several schools in Grand Traverse County, including Traverse City West High School (TCWHS). Plaintiff, Sherri Glezman, was injured at the athletic facility at TCWHS when her thumb was caught between two entrance doors. The athletic facility first opened in 2009 and features three entrance doors, which, in their original design, were each made of lightweight aluminum. Facing the facility, as originally designed, the left door opened from right to left and the middle and right doors opened from left to right. Christopher Wise, defendant's Director of Building Operations and Security, testified that between 2008 and 2015 strong winds blowing at the athletic facility's entrance would catch the right door and "either break the control arm[1] or pull the screws loose from the retraining mechanism" between three and six times each year. According to Wise, the wind-related failures eventually damaged the right door to the point where it "would no longer latch." Wise also

---

[1] Wise testified that a control arm "connects a door's opening and closing mechanism to the door."

opined that "the athletic-wing entrance was a poor initial design because it made it difficult for guests to use [the] barrier-free access button and key-card reader" on the right side of the right door.

In the fall of 2015, Wise worked with Paul Thwing, defendant's Director of Capital Protects and Planning, to redesign the entrance to the athletic facility. Under the redesign, the arc of the right door was reversed, meaning that it opened from right to left. Therefore, the arc of the right door intersected with the arc of the middle door, which still opened from left to right. Wise testified that defendant ordered a new, heavier right door, a restraining chain for the right door, and "non-conflicting" handles for the right and center doors. Wise explained that the "restraining chain served as a backup safety measure in case the control arm failed" and that the non-conflicting handles meant "that in the event that the [right door's] control arm and restraining mechanism failed, and the door handles from the center and [right door] came together, they could not come into direct conflict and injure someone."

The new door arrived before the safety hardware. According to Wise, defendant intended to delay the installation of the new door until the safety hardware arrived, but decided to move up the installation because the old right door had become so damaged that defendant had to screw the door to the frame to keep it closed. The new door was installed sometime in January 2016[2] without the non-conflicting handle and restraining chain (collectively, the safety hardware).[3]

On January 28, 2016, TCWHS hosted a basketball game at the athletic facility. Plaintiff entered the athletic facility through the center entrance door. Plaintiff alleged that, when she "grasped the [center] door and began to open it, the [right] door was thrust open by a young man exiting the building" and that "either the force of the wind or the force of the exiting student's thrust" caused the right door to open "with sufficient force to carry the door into conflict with the arc of the doorway [plaintiff] had attempted to open." According to plaintiff, the right "door handle struck the door handle which [she] was utilizing to open the entryway door, striking [her] thumb and causing it to be crushed between the two metal entryway doors." Surveillance footage revealed that, approximately one hour before the incident, the right door's control arm had failed and the door was swinging freely. The office of TCWHS's Athletic Director, Jason Carmien, was approximately 100 feet from the facility's entrance. Carmien, however, testified that he did not observe the door swinging freely before the accident.

---

[2] The parties disagree on when the new door was installed. Defendant claims the door was installed one week before plaintiff's accident; plaintiff avers that the door was installed one month before her accident. Nonetheless, for the purposes of this opinion, the exact install date is immaterial.

[3] In all respects material to this opinion, Thwing's deposition testimony was consistent with Wise's deposition testimony and affidavit. To the extent that Thwing's testimony conflicted with Wise's testimony, the conflict would present a question of fact for the jury.

To recover for her injuries, plaintiff brought a complaint against defendant, alleging that defendant negligently maintained the entryway by failing to install the safety devices and failing to monitor, disable, and repair the right door after the control arm failed. Plaintiff recognized that, as a governmental agency, defendant was generally immune from tort liability, but averred that defendant was statutorily liable under the public-building exception, MCL 691.1406.[4]

Defendant moved for summary disposition under MCR 2.116(C)(7) and (10), arguing that the public-building exception did not apply and that it had no notice of the defect before the accident. Defendant recognized that a governmental entity is immune from suit for design defects and averred that plaintiff's injury was "caused by a redesign and renovation of the entrance coupled with a sudden fracture of a metallic control arm which would have prevented the accident had it not broken." Defendant argued that, but for the redesign and the reversal of the right door's arc, the accident would not have occurred because it would have been impossible for plaintiff's thumb to be caught between the two handles. According to defendant, the decision to proceed with the installation without the safety hardware was also a design decision rather than an act of maintenance because defendant "was not attempting to restore the doors to their prior state or condition." Alternatively, defendant argued that it could not be liable because no employee actually knew of the broken control arm and it "would be unreasonable to conclude that [defendant] was not duly diligent in locating the control arm failure in an hour or less."

Plaintiff agreed that the decision to reverse the arc of the right door was a design decision immune from tort liability. Plaintiff, however, argued that the failure to install safety devices that were part of both the original design and the redesign could not constitute a "design failure." Regarding notice, plaintiff averred that an hour-long failure of the control arm immediately preceding a scheduled basketball game was long enough to put defendant on constructive notice of the hazard, especially given the history of control-arm failures with the right door.

The trial court concluded that the installation of the door without the safety devices was not a design decision because the safety features were included in the redesign plans. Regarding notice, the trial court reasoned that the relevant time period was not the time separating plaintiff's injury and the control-arm failure, but the time defendant knew about the missing safety hardware. Because there was no question that defendant knew about the missing hardware for at least a week before the accident, the trial court concluded that defendant had ample notice of the hazard. Therefore, the trial court denied defendant's motion. This appeal followed.

## II. ANALYSIS

We review de novo the trial court's grant or denial of summary disposition. *Estate of Voutsaras v Bender*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 340714), slip op at 3. Summary disposition is appropriate under MCR 2.116(C)(7) when the plaintiff's claim

---

[4] Plaintiff's husband, Terri Glezman, brought a claim for loss of consortium, which is not at issue in this appeal.

fails because of immunity granted by law. *Id*. "To survive a (C)(7) motion based on governmental immunity, a plaintiff must allege facts justifying an exception to governmental immunity." *Tellin v Forsyth Twp*, 291 Mich App 692, 698; 806 NW2d 359 (2011) (internal citation and quotation marks omitted). "In reviewing a (C)(7) motion, a court must accept all well-pleaded allegations as true and construe them in favor of the nonmoving party." *Id*. "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 294; ___ NW2d ___ (2018).

"The operation of a public school is a governmental function." *Stringwell v Ann Arbor Public School Dist*, 262 Mich App 709, 712; 686 NW2d 825 (2004). "Absent a statutory exception, a governmental agency is immune from tort liability when it exercises or discharges a governmental function." *Maskery v Board of Regents of University of Michigan*, 468 Mich 609; 613; 664 NW2d 165 (2003), citing MCL 691.1407(1). Our Legislature has provided few exceptions to governmental immunity, which we must construe narrowly. *Stringwell*, 262 Mich App at 712. At issue in this case is the public-building exception,[5] which provides, in pertinent part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge[6] of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. [MCL 691.1406.]

To bring suit under this exception, a plaintiff must prove:

> (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency

---

[5] The remaining exceptions are the highway exception, MCL 691.1402; the sidewalk exception, MCL 691.1402a; the government-vehicle exception, MCL 691.1405; the proprietary-function exception, MCL 691.1413; the government-hospital exception, MCL 691.1407(4); and the sewage exception, MCL 691.1417.

[6] Knowledge is "conclusively presumed when such defect existed so as to readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place." MCL 691.1406.

failed to remedy the alleged defective condition after a reasonable amount of time. [*Tellin*, 291 Mich App at 699.]

The parties do not dispute that defendant is a governmental agency or that TCWHS is a public building open for use by members of the public. Rather, as below, the parties dispute whether the broken right door without the safety hardware constituted a failure to maintain the door under the public-building exception and, if so, whether defendant had knowledge of the hazardous condition with sufficient time to remedy it before the accident. We address each argument in turn.

"The public-building exception excludes claims of design defects.[7] Therefore, to avoid governmental immunity, a plaintiff must assert a claim that the defective condition was the result of a failure to repair or maintain." *Id*. at 700. As recognized by the parties, our Supreme Court explained the distinction between design defects and a failure to repair and maintain in *Renny v Dep't of Transportation*, 478 Mich 490, 500-501; 734 NW2d 518 (2007), as follows:

> The first sentence of MCL 691.1406 states that "[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public." This sentence unequivocally establishes the duty of a governmental agency to "repair and maintain" public buildings. Neither the term "repair" nor the term "maintain," which we construe according to their common usage, encompasses a duty to design or redesign the public building in a particular manner. "Design" is defined as "to conceive; invent; contrive." By contrast, "repair" means "to restore to sound condition after damage or injury." Similarly, "maintain" means "to keep up" or "to preserve." Central to the definitions of "repair" and "maintain" is the notion of restoring or returning something, in this case a public building, to a prior state or condition. "Design" refers to the initial conception of the building, rather than its restoration. "Design" and "repair and maintain," then, are unmistakably disparate concepts, and the Legislature's sole use of "repair and maintain" unambiguously indicates that it did not intend to include design defect claims within the scope of the public building exception. [(Internal citations omitted).]

The parties tend to make their arguments by negative implication. Defendant focuses on our Supreme Court's definitions of "repair" and "maintain," arguing that, because it was installing a new door, it was not returning the old door "to a prior state or condition." Plaintiff's argument tends to focus on our Supreme Court's definition of design, pointing out that defendant did not invent or conceive of a door design that omitted the safety hardware; rather, defendant designed the safety hardware into the reconfigured right door but failed to properly maintain that door by installing the safety hardware. Accordingly, we must determine whether defendant's decision to

---

[7] This exclusion applies equally to original designs and "redesigns." *Id*. at 703-704.

forego the hardware installation included in the redesign constitutes a design defect or a failure to properly repair or maintain the door.

In *Tellin*, 291 Mich App 692, this Court applied our Supreme Court's definitions to the redesign of a public learning center. Applying *Renny*'s analysis, the *Tellin* panel reasoned that a "design defect would appear to consist of a dangerous condition inherent in the design itself, such as its characteristics, functioning, and purpose." *Id*. at 705. The *Tellin* panel noted that an "action could initially be a design decision, but subsequent improper installation, malfunction, deterioration, or instability could later transform this decision into a failure to repair or maintain." *Id*. at 706.

Here, the design for the new door included the safety hardware, but the safety hardware was not installed with the door. Thus, accepting as true plaintiff's well-pleaded allegation that the absence of the safety hardware caused her injury, plaintiff's injury was not caused by "a dangerous condition inherent in the design itself." *Id*. at 705. In other words, had the door been installed according to its design, plaintiff would not have been injured. Accordingly, we agree with the trial court that the absence of the safety hardware was not a design defect; it was a failure to maintain the newly designed door and is actionable under the public-building exception.[8]

Relatedly, defendant argues that it was entitled to summary disposition because it could not have had notice of the control-arm failure in the hour between the failure and plaintiff's injury. As already noted, the notice requirement may be proven by either actual notice or constructive notice, i.e., a showing that the defendant should have discovered the dangerous condition in the exercise of reasonable diligence. *Ali v City of Detroit*, 218 Mich App 581, 586-587; 554 NW2d 384 (1996). Preliminarily, we believe that a question of fact exists whether defendant had constructive notice of the broken control arm; the control-arm failure occurred in the hours preceding a public basketball game, causing the door to swing freely within the view of the athletic director's office. More importantly, however, we agree with the trial court that the relevant notice period was not the time separating plaintiff's injury and the control-arm failure. Rather, the relevant period is the time defendant knew about the missing safety hardware. According to Wise, defendant decided to install the door knowing that the safety hardware was missing. Therefore, defendant had actual notice of the defect for at least a week before the accident.

Accordingly, viewing the record in a light most favorable to plaintiff and accepting her well-pleaded allegations as true, plaintiff's claim falls squarely within the public-building

---

[8] In its brief on appeal, defendant argues that it did not include the safety devices in its design for the new door. We do not believe that the current record supports this assertion—particularly given Wise's affidavit and testimony. Nonetheless, to the extent that defendant can present evidence that its design did not include the safety devices, defendant creates a question of fact which, as the term suggests, must be resolved through the fact-finding mechanisms of trial.

exception to governmental immunity.[9] The trial court did not err by denying defendant's motion for summary disposition.

Affirmed.

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[9] In its briefing before the trial court, defendant argued that the safety devices, particularly the safety chain, would not have prevented the accident. While the record shows that wind gusts would regularly rip the safety chain out of the old door, defendant offered no evidence showing that a similar failure would befall the new, heavier door. Similarly, defendant offered no evidence that the intended non-conflicting handles would have been insufficient to prevent plaintiff's injury. Therefore, a question of fact remains whether the failure to install the safety hardware caused plaintiff's injury.