*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HAROLD WIEHN,

       Plaintiff-Appellee,

v

CITY OF FREMONT,

       Defendant,

and

FREMONT COMMUNITY RECREATION
AUTHORITY,

       Defendant-Appellant.

UNPUBLISHED
December 17, 2020

No. 349746
Newago Circuit Court
LC No. 18-020379-NO

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

       Defendant, Fremont Community Recreation Authority (Authority), appeals as of right the trial court's order denying its motion for summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity. We reverse.

       This case commenced when Wiehn filed a complaint against the Authority and the City of Fremont alleging that he suffered an injury while at the Fremont Community Recreation Center. Specifically, Wiehn alleged that "after swimming, while in the locker room, [he] attempted to sit on a bench, when suddenly and without warning, the bench collapsed and caused [him] to fall to the ground with tremendous force," causing injury. Wiehn maintained that the bench—a permanent fixture bolted or otherwise permanently attached to the locker room wall of the public building—constituted a dangerous or defective condition and, therefore, an exception to governmental immunity under MCL 691.1406. Wiehn further maintained that defendants owed a duty to repair and maintain the bench so as to render it safe, that defendants were aware of the

-1-

defective condition by constructive or actual notice, and that defendants failed to remedy the condition or take the action necessary to protect the public within a reasonable time.[1]

In a motion for summary disposition, the Authority argued that the bench was not dangerous or defective under the governmental immunity statute and that it was undisputed that the Authority had neither actual nor constructive notice of the risk of the plastic anchors affixing the bench to the wall failing. In response, Wiehn argued that the Authority "cannot merely put their head in the sand and claim that they did not have notice" and that "[t]he law in Michigan [was] clear that [the Authority] had a duty to conduct inspections in reasonable intervals," which they failed to do. Wiehn presented an affidavit from a safety expert, Steve Ziemba, whom Wiehn asserted "would testify to the fact that a static load test would have identified the defect long before [he] was injured" and that regular inspections—including static load tests—were a standard industry practice.

In a written opinion, the trial court denied summary disposition. Citing *Tellin v Forsyth Twp*, 291 Mich App 692; 806 NW2d 359 (2011), and *Ali v Detroit*, 218 Mich App 581; 554 NW2d 384 (1996), the trial court held that "maintenance involves testing" and that "[a]n indispensable component of maintenance is inspection." Despite recognizing that Wiehn provided no evidence of actual notice, the trial court nevertheless held that because Ziemba opined that an inspection of the bench at regular intervals and static load tests of the bench's weight-bearing capacity would have revealed that the plastic anchors compromised the bench's integrity, there was a fact question about whether the Authority had constructive notice.[2]

On appeal, the Authority argues that it owed no design duty nor any special duty to test the weight limit of the bench and that Wiehn failed to offer any evidence creating a fact question about the Authority's knowledge of the alleged defective condition. We conclude that the trial court erred by denying summary disposition because the public-building exception does not apply to design defects and Wiehn failed to raise a fact issue about whether the Authority was actually or constructively aware of the alleged defect.

A motion for summary disposition is proper under MCR 2.116(C)(7) when a claim is barred by legal immunity. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432; 824 NW2d 318 (2012). Under MCR 2.116(C)(7), "a court must review all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Yono v Dep't of Trans*, 495 Mich

---

[1] Wiehn also claimed initially that because he paid a monthly membership fee, defendants were not performing a governmental function but rather a proprietary function and that, resultantly, governmental immunity did not apply. Wiehn later abandoned this theory and also stipulated to the dismissal of the City of Fremont from this case.

[2] Although not directly relevant to the discrete issue on appeal, the trial court also recognized that Wiehn had not complied with court rules concerning the disclosure and production of experts. However, it refused to reject Ziemba's affidavit on that ground. Instead, the trial court awarded the Authority actual costs and attorney fees related to the motion. The Authority does not ask us to review whether the trial court erred by relying on Ziemba's affidavit.

982, 983; 843 NW2d 923 (2014); MCR 2.116(G)(5). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether immunity bars the claim is a question of law for the court." *Nash v Duncan Park Comm*, 304 Mich App 599, 630; 848 NW2d 435 (2014) (quotation marks and citations omitted), vacated in part on other grounds and lv den 497 Mich 1016 (2015).

"The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, provides immunity from tort liability to governmental agencies when they are engaged in the exercise or discharge of a governmental function." *Reed v State*, 324 Mich App 449, 453; 922 NW2d 386 (2018). MCL 691.1407(1) provides that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the government agency is engaged in the exercise or discharge of a governmental function." As a unit of government, the Authority enjoys a presumption of governmental immunity. See *Mack v Detroit*, 467 Mich 186, 203-204; 649 NW2d 47 (2002). To avoid summary disposition, Wiehn was required to demonstrate facts justifying the application of a statutory exception to government immunity. See *Yono*, 495 Mich at 982. We narrowly construe these statutory exceptions to governmental immunity. *Poppen v Tovey*, 256 Mich App 351, 355; 664 NW2d 269 (2003).

In this case, Wiehn relies upon the public-building exception to governmental immunity, MCL 691.1406. This exception provides, in pertinent part, as follows:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place. [MCL 691.1406.]

As our Supreme Court instructed in *Renny v Dep't of Transp*, 478 Mich 490, 495-496; 734 NW2d 518 (2007),

> [I]n order for a plaintiff to avoid governmental immunity under the public[-]building exception, the plaintiff must prove that (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable amount of time.

The parties agree that the Authority is a governmental agency and that the pool bathhouse was open for use by members of the public. They disagree about the applicability of the remaining

elements. Again, to avoid summary disposition, it was Wiehn's burden to establish—at the very least—a fact issue about each requisite element. See *Yono*, 495 Mich at 982.

Initially, the Authority maintains that the use of plastic anchors instead of metal anchors constituted a design defect the type of which did not satisfy the public-building exception. We agree.

In *Renny*, 478 Mich at 498-501, construing the plain meaning of MCL 691.1406, our Supreme Court held that "[c]entral to the definitions of 'repair' and 'maintain' is the notion of returning something, in this case a public building, to a prior state or condition," a concept entirely distinct from defective conditions stemming from improper design, faulty construction, or the absence of safety devices. Accordingly, the *Renny* Court held that the public-building exception "imposed a *duty only to repair and maintain a public building*," and that the Legislature "did not intend to include design defect claims within the scope of the public building exception." See *id*. at 501-502 (emphasis added). Subsequently, in *Tellin*, 291 Mich App at 705-706, we clarified that "[a] design defect would appear to consist of a dangerous condition inherent in the design itself, such as its characteristics, functioning, and purpose," and that "[a]n action could initially be a design decision, but subsequent improper installation, malfunction, deterioration, or instability could later transform this decision into a failure to repair or maintain."

It is our view that the purportedly defective condition at issue in this case arises solely from an allegedly faulty design or construction and, as a result, cannot satisfy the public-building exception. Although Wiehn suggests in his brief on appeal that the wall fixture supporting the bench collapsed as the result of "deterioration" or "disrepair," we see nothing in the record suggesting that there was any evidence that bench required maintenance or repair. Notably, Wiehn's own expert, Ziemba, asserted that it was the "decision" to use plastic anchors instead of metal ones that "compromised the integrity of the bench," a design flaw, not a defect arising from a lack of maintenance or repair, and not a basis for governmental liability under the public-building exception. See *Renny*, 478 Mich at 501-502.

Even assuming that the defect alleged in this case was not a design flaw, Wiehn still failed to demonstrate that the Authority had actual or constructive notice of the defect. Wiehn admitted during his deposition that the bench "looked fine" to him although he did not inspect it closely. The Authority also submitted an affidavit from its director, who asserted that "there were no complaints regarding the bench at issue nor was there any indication that it was not working properly or that the bolts, which affixed the bench to the wall, were at risk of falling out." Although the Authority admittedly did not "have a protocol per se" about conducting maintenance, the Authority presented evidence that staff completed "walkthroughs at the end of the night to look for things," the health department did yearly inspections, and that membership would alert the staff if they noticed something broken. Despite recognizing this lack of actual notice, the trial court equated the duty of maintenance with a duty of inspection and accepted Ziemba's expert opinion that inspections, including a static load test of the bench's weight-bearing capacity, were required and would have revealed the bench's defectiveness. We reject this faulty syllogism.

Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 197; 694 NW2d (2005) (quotation marks and citation omitted). Again,

Wiehn acknowledged during his deposition that nothing appeared amiss to him about the bench on the day of his alleged fall and injury. Moreover, there was at least some evidence that the Authority had systems in place to identify and repair issues as they arose but that there had never been any complaints or other reason to suspect that this particular bench presented any risk. To overcome these difficult facts, Wiehn relies on Ziemba's affidavit and argues, as he did before the trial court, that the Authority had a duty to perform a "static load test" at regular intervals, which would have revealed the shortcomings of the plastic anchors affixing the bench to the wall. This is incorrect.

There is no legal requirement that a governmental entity perform a static load test of a bench's weight-bearing capacity. As we have already explained, the public-building exception to governmental immunity only imposes liability for failures of repair or maintenance and "is not suggestive of an additional duty beyond repair and maintenance." See *Renny*, 478 Mich at 501. Even outside of the context of governmental immunity, our Supreme Court expressly disavowed any requirement in a premises liability action that a defendant present evidence of a routine or reasonable inspection to prove the lack of constructive notice of a dangerous condition on its property. See *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016). Rather, the defendant can prevail on summary disposition merely by demonstrating that the plaintiff failed to present sufficient evidence that the defendant had actual or constructive notice of the dangerous condition. See *id*.

Wiehn relies primarily on this Court's decision in *Ali*, 218 Mich App at 586-587, which held that there was a genuine issue of material fact concerning a governmental entity's constructive notice of a defective condition leading to the collapse of a bus shelter because the plaintiff's experts "testified that a reasonable maintenance and inspection schedule would have resulted in the discovery of the [bus] shelter's instability and prompted its repair." Unfortunately, *Ali* does not provide any insight into the exact nature of the expert testimony or the manner in which the bus shelter collapsed. However, by referring to the governmental entity's lack of "a reasonable maintenance and inspection schedule," we read *Ali* merely as standing for the unremarkable proposition that constructive notice of a defective condition may be implied from the governmental entity's failure to act with reasonable care in light of a recognizable defect apparent because of its character and the length of its duration. Nothing about our decision in *Ali* purported to require that governmental entities perform a static load test of a bench at regular intervals, especially absent any external, visible reason to suspect that the bench required maintenance or repair.

We must narrowly construe exceptions to governmental immunity. See *Poppen*, 256 Mich App at 354. Wiehn's understanding of the requirements imposed on governmental entities to preserve governmental immunity might swallow the exception entirely. It seems unlikely to us that the Legislature intended to require governmental entities to regularly and preemptively test the weight-bearing capacity of every fixture or floor piece of its buildings. Cf. *Barrow v Detroit Election Comm'n*, 301 Mich App 404, 416; 836 NW2d 498 (2013) (recognizing that, although a disfavored rule of statutory construction, judges should nevertheless construe statutes to avoid results manifestly inconsistent with legislative intent). Absent a requirement for conducting a static load test at regular intervals, even by Wiehn's own implicit admission, the Authority could not have had constructive notice of this alleged defect. Finally, even assuming that reasonable diligence required the Authority to conduct static load tests at regular intervals, Wiehn still could not satisfy the necessary elements for the exception to apply because he offers only speculation

and not any actual evidentiary support for his conclusion that the static load test would have revealed the bench's allegedly compromised stated.  See *Yono*, 495 Mich at 982-983.

Reversed.  The Authority, having prevailed in full, may tax costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto