*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WAYNE FILIZETTI, Personal Representative of the ESTATE OF AMARAH FILIZETTI and Next Friend of LAILA FILIZETTI and MELISSA FILIZETTI, and STACEY FILIZETTI,

        Plaintiffs-Appellees,

v

GWINN AREA COMMUNITY SCHOOLS,

        Defendant/Cross-Plaintiff/Cross-Defendant-Appellant,

and

WEST EDUCATIONAL LEASING, INC., doing business as PROFESSIONAL CONTRACT MANAGEMENT,

        Defendant,

and

TRACY BELUSAR, ANTHONY J. FILIZETTI, and ROBERT SOYRING,

        Defendants-Appellants,

and

GWINN AREA CLEANING AND MAINTENANCE, INC.,

        Defendant/Cross-Defendant/Cross-Plaintiff.

UNPUBLISHED
August 27, 2020

No. 344878
Marquette Circuit Court
LC No. 16-054781-NO

-1-

Before: METER, P.J., and O'BRIEN and TUKEL, JJ.

PER CURIAM.

Defendant/cross-plaintiff/cross-defendant-appellant, Gwinn Area Community Schools (the school), and defendants-appellants, Tracy Belusar, Anthony J. Filizetti,[1] and Robert Soyring (the individual defendants, and with the school "defendants"), appeal as of right the trial court's order denying their motion for summary disposition under MCR 2.116(C)(7) (immunity granted by law), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact), and partially granting plaintiffs' motion for summary disposition under MCR 2.116(C)(10). We reverse.[2]

## I. UNDERLYING FACTS

The north wall of the school gym has an alcove that housed a portable stage used for the high school graduation ceremony. In 2010, Joe Routhier, the CADD (computer aided design and drafting) teacher at the school, designed and constructed two panels to cover the stage when it was not in use. The cover consisted of two wooden panels that were 10 inches wide, 6 feet high, and 12 feet long, and weighed 325 pounds each. Each panel had padding on one side and was designed to be rigid enough to absorb impact, to be covered on top to keep refuse from going behind the panels, to be removable, and to be portable. The panels could be affixed to the gym wall and generally were detached from the gym wall only in the days surrounding the school's high school graduation ceremony. When removed, the panels were placed on specially designed carts and stored in the hallway near the CADD room by leaning the panels against the wall at an angle. Routhier and his CADD students removed and reinstalled the panels around the graduation ceremony each year from 2010 to 2014. Routhier's CADD students also removed the panels before graduation in 2015, but they did not reinstall the panels after graduation that year.

Routhier resigned his position at the school at the end of the 2014-2015 school year, but before leaving he created a manual for how to remove and reinstall the panels. The panels were not reinstalled during the summer of 2015 and, as a result, the alcove with the portable graduation stage was exposed in the gym. On September 2, 2015, Soyring, the athletic director at the school, sent an email to Anthony, the director of finance and human services at the school, stating that the panels needed to be reinstalled because the alcove and portable stage were a safety hazard.

On September 3, 2015, Anthony and Belusar, a part-time maintenance worker at the school, began the process of reinstalling the panels. Anthony and Belusar loaded the first panel on one of the carts at 9:22 a.m. and brought it to the gym. Anthony and Belusar noticed that cheerleaders,

---

[1] All individuals with the last name Filizetti will be referred to by their first names.

[2] Defendants argue that the trial court erred by granting summary disposition under MCR 2.116(C)(8), but we do not have jurisdiction over interlocutory orders, such as the one at issue here, that grant or deny summary disposition under MCR 2.116(C)(8). MCR 7.202(6)(a)(*v*); MCR 7.203(A). Defendants failed to seek leave to appeal the trial court's MCR 2.116(C)(8) summary disposition order.

coached by Stacey Filizetti, were practicing on mats on the southeast end of the gym, approximately 80 feet from the alcove area. The first panel was placed in the alcove and leaned against the wall. The base of the panel was placed between 12 and 24 inches from the wall and the panel itself leaned against the wall, to stabilize the panel. Anthony and Belusar then retrieved the second panel and placed it in the alcove at some time before 9:40 a.m. The second panel also was leaned against the wall, with the base 12 to 18 inches out; and two to three feet separated the two panels at their bases. Belusar tested the stability of the panels by pushing her weight against the panels; the panels did not fall. Anthony believed that the two panels were stable as positioned. Neither Belusar nor Anthony saw anyone in the gym other than the cheerleaders and the person they assumed to be the coach; neither saw children in the gym. After placing the second panel against the wall, Belusar told Anthony that she needed to retrieve some tools and would ask another employee to help her reinstall the panels; Anthony told Belusar that he would be in his office if she needed additional assistance. Soyring walked through the gym around 9:30 a.m. and saw the cheerleaders practicing; he did not observe any children in the gym.

Stacey brought her three four-year-old daughters to cheerleading practice with her and estimated that they were with her in the gym at 9:15 a.m. Stacey did not see the panels being wheeled into the gym, but she sent her children to play at the north end of the gym when the cheerleaders began practicing stunts around 10:00 a.m. The panels were still leaning against the wall in the alcove at this time. As the children were on the north end of the gym, one of the panels fell on top of Amarah Filizetti. Amarah died from her injuries the following day.

Plaintiffs filed a complaint alleging that the school was liable for failing to repair and maintain a public building and Belusar, Anthony, and Soyring were grossly negligent. Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10) and argued that they were entitled to immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. Plaintiffs responded by filing a motion for summary disposition of their own under MCR 2.116(C)(9) and (10) and argued that defendants were not entitled to governmental immunity and that plaintiffs were entitled to judgment as a matter of law. The trial court eventually issued a written opinion and partially granted summary disposition to plaintiffs. Regarding the claims against the individual defendants, the trial court denied their motion for summary disposition, concluding that there were questions of fact regarding the negligence of the individual defendants. Regarding the claim against the school, the trial court denied the school's motion for summary disposition and granted in part plaintiffs' motion for summary disposition. The trial court found that the panels were a fixture of the school, but that whether the school failed to protect the public from their placement in the gym within a reasonable amount of time was a question of fact. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The trial court granted summary disposition to defendants under MCR 2.116(C)(7) and (10). A trial court's summary disposition ruling is reviewed de novo. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008).

A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence . . . . Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. [*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

The moving party has the initial burden to support its claim with documentary evidence but, once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party asserts that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present such evidence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Finally, "[i]ssues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011).

## B. THE INDIVIDUAL DEFENDANTS

The trial court erred by denying the individual defendants' motion for summary disposition under MCL 691.1407(2) because reasonable minds could not differ with respect to whether the individual defendants' conduct amounted to gross negligence.

Under MCL 691.1407(2),

[g]overnmental employees are immune from liability for injuries they cause during the course of their employment if they are acting or reasonably believe they are acting within the scope of their authority, if they are engaged in the exercise or discharge of a governmental function, and if their conduct does not amount to gross negligence that is the proximate cause of the injury or damage." [*Love v Detroit*, 270 Mich App 563, 565; 716 NW2d 604 (2006).]

"[T]he burden . . . fall[s] on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense." *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008). Here, the only dispute is whether the individual defendants' conduct amounted to gross negligence that is the proximate cause of the injury or damage. MCL 691.1407(2)(c).

The GTLA defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden*, 461 Mich at 122. Consequently, a mere showing of negligence or that additional safety precautions could have prevented the injury in question is not sufficient to establish that a government employee was grossly negligent. *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). Instead, a government employee is only grossly negligent if he or she demonstrates "a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id*. Stated differently, a defendant is grossly negligent under circumstances in which, "if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Id*.

The determination of whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact. *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). But if no reasonable jury could find that the employee's conduct amounted to gross negligence, the plaintiff's claim must be dismissed. See *Chelsea Investment Group, LLC*, 288 Mich App at 265.

Here, Soyring asked Anthony to ensure that the stage cover was reinstalled. Soyring was not involved in the moving of the stage cover panels to the gym or in leaning the panels against the gym wall. The following day, Anthony and Belusar moved the stage cover panels into the gym and leaned the panels against the wall in the north end of the gym after pushing out the base of each panel to ensure that the panels were stable. Neither Anthony nor Belusar observed anyone inside the gym except for the cheerleaders who were practicing on mats in the south end of the gym; they also did not anticipate that the cheerleaders or anyone else would enter the north end of the gym. Furthermore, Belusar tested the stability of the panels by placing her weight on them, which did not cause them to fall. Anthony believed that the panels were stable and well positioned. The panels were left unattended while Belusar went to obtain the hardware and drill necessary to attach the panels to the wall. Under these circumstances, reasonable minds might differ as to whether Anthony and Soyring were negligent in leaving the unattended panels leaning against the gym wall for a period of 30 minutes or less, but they could not differ as to whether their conduct

was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted. Further, because the panels were only placed in the gym the morning of the accident, and because Soyring played no role in leaning the panels against the gym wall, reasonable minds could not differ as to whether his conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury would result. Because there was no material question of fact as to gross negligence, the trial court erred by failing to grant summary disposition under MCR 2.116(C)(7) and (10) in favor of the individual defendants.

## C. THE SCHOOL

The trial court did not err by finding that the stage cover constituted a fixture and, therefore, part "of a public building." The trial court did err, however, by denying the school's motion for summary disposition because leaning the stage cover panels against the gym wall did not constitute a failure to repair or maintain a public building.

"The governmental tort liability act (GTLA), MCL 691.1401 et seq., provides: 'Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.' " *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 83-84; 746 NW2d 847 (2008), quoting MCL 691.1407(1). The public building exception, MCL 691.1406, is one such exception and states, in pertinent part, that

> [g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place.

Our Supreme Court has held that in order for a plaintiff to avoid governmental immunity under the public building exception, a plaintiff must prove that

> 1) a governmental agency is involved, 2) the public building in question is open for use by members of the public, 3) *a dangerous or defective condition of the public building itself exists*, 4) the governmental agency had actual or constructive knowledge of the alleged defect, and 5) the governmental agency failed to remedy the alleged defective condition after a reasonable period of time. [*de Sanchez v Dep't of Mental Health*, 467 Mich 231, 236; 651 NW2d 59 (2002) (citation omitted).]

The duty which the statute imposes is limited to repair and maintenance of a public building. *Renny v Dep't of Transportation*, 478 Mich 490, 502; 734 NW2d 518 (2007). "It is not

suggestive of an additional duty beyond repair and maintenance." *Id*. at 501. The parties disputed below whether the stage cover was "of a public building" and whether there had been a "reasonable period" during which the school failed to repair and maintain the public building. Defendants maintained that the stage cover was not a fixture and therefore not "of a public building", and plaintiffs maintained that the stage cover was a fixture. The trial court granted partial summary disposition to plaintiffs, finding that the stage cover constituted a fixture and thus was part of a public building. The trial court otherwise denied the parties' motions for summary disposition, finding that questions of fact existed with regard to the reasonableness of the period during which the school failed to remedy the defective condition or take action reasonably necessary to protect the public.

To establish the applicability of the public building exception, "the alleged defect must be a defect of the building itself and not merely a transient condition." *Johnson v Detroit*, 457 Mich 695, 704; 579 NW2d 895 (1998). Fixtures attached to the public building are considered to be part "of the building itself" and can support a claim under the public building exception. *Fane v Detroit Library Comm*, 465 Mich 68, 77; 631 NW2d 678 (2001). "An item is a fixture if (1) it is annexed to realty, (2) its adaptation or application to the realty is appropriate, and (3) it was intended as a permanent accession to the realty." *Id*. at 78. "The controlling intention regarding whether an object has become a fixture of the realty is manifested by the objective, visible facts." *Carmack v Macomb Co Community College*, 199 Mich App 544, 547; 502 NW2d 746 (1993) (quotations marks and citation omitted). Annexation to the realty may be actual, meaning that the item is permanently affixed to the building in some fashion, or constructive. *Fane*, 454 Mich at 79-80. "Constructive annexation occurs where the item cannot be removed from the building without impairing the value of both the item and the building." *Id*. at 80.

Here, the objective, visible facts show that the controlling intention was that the stage cover was to be a fixture. The panels were designed and built for the purpose of enclosing the alcove area where the stage was stored, to prevent student athletes from colliding with the stage. The panels themselves were physically attached to the walls. The panels' size, permanence to the alcove, and function are revealing in that regard. Each of the panels was 10 inches wide, 6 feet high, and 12 feet long, and weighed 325 pounds. The design necessarily contemplated that the panels would not be easily movable without the use of specially designed carts. Once the stage cover was designed and built in 2010, it was, for the overwhelming majority of its five-year existence, stationary. When the panels were moved (once per year), the process required three individuals to load the panels and push them on the carts through the gym to the hallway; during that process, the panels were only moved to a hallway near the CADD room. The once-a-year re-installation required the same process in reverse. The nature of the stage cover stands in contrast to nonstationary items such as library chairs and ping pong tables, which courts have rejected as being fixtures. See *Velmer v Baraga Area Schs*, 430 Mich 385, 396; 424 NW2d 770 (1988) (examining caselaw and finding that a milling machine could be constructively attached to the building by its weight); cf. *Carmack*, 199 Mich App at 547 (finding that gymnastic equipment was not a fixture when it was "easily removable and was removed on an almost daily basis"). Rather, the record evidence, when viewed in a light most favorable to plaintiff, demonstrates that the stage cover functioned as a permanent fixture of the gym, and that it was not intended to be removed except for graduation. Thus, application of the relevant factors suggests that the stage cover was a fixture.

The remaining inquiry concerns whether Belusar's and Anthony's leaning of an unsecured and unguarded panel of the stage cover against the wall in the gym during the installation process constituted a failure to repair or maintain the building. The trial court did not address the necessary element of whether the leaning of the panel against the gym wall constituted a failure to repair or maintain the public building. "[A] failure to repair or maintain appears to consist of something caused by extrinsic circumstances, such as a malfunction, deterioration, instability, or a fixture that is improperly secured or otherwise improperly constructed or installed." *Tellin v Forsyth Twp*, 291 Mich App 692, 705-706; 806 NW2d 359 (2011). Here, there was no evidence to suggest that the school failed to maintain or repair the stage cover. Rather, the "defective condition" in this case was not the lack of a stage cover over the alcove, but, rather, the leaning of unguarded and unsecured panels on the wall as part of the installation process. This sounds more in the nature of a claim that Belusar and Anthony were negligent in the installation process rather than that they failed to repair or maintain the panels. Indeed, plaintiffs' claim is based on the design of the walls that required their removal and reinstallation each year. But design defect claims are outside the scope of the public building exception. See MCL 691.1406; *Renny*, 478 Mich at 500-501. Thus, under these circumstances, this claim is not actionable under the public building exception.

Furthermore, even if we did not conclude that plaintiff's claim was essentially a design defect claim we would still reverse because the panels themselves were not dangerous or defective. Our Supreme Court recognizes that a dangerous or defective fixture "can" or "may" support a claim of liability under the public building exception. *Fane*, 465 Mich at 78; *Velmer v Baraga Area Schools*, 430 Mich 385, 396; 424 NW2d 770 (1988). Even though the panels were fixtures, plaintiffs' claim under the public building exception is untenable under the facts. The dangerous or defective condition was not of the fixtures (and therefore of the public building) themselves, but of how the employees placed the fixtures while installing them. This dangerous or defective condition is more akin to the type of transitory condition described in *Wade v Dep't of Corrections*, 439 Mich 158, 168; 483 NW2d 26, 30 (1992): the dangerous condition posed by the panels was related to the employees' negligence while installing them, not the permanent structure or physical integrity of the building itself. Like in *Wade*, 439 Mich at 171, plaintiffs' "claim alleges no more than mere negligence" that resulted in the complained-of transitory condition. "[T]he transitory condition was not caused by a dangerous or defective condition of the building itself, thus the public building exception does not apply." *Id*. at 161. Accordingly, plaintiff's claim must also fail for this reason.

III. CONCLUSION

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Jonathan Tukel