*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

G. C., by Next Friend CRYSTAL CAVAZOS,

Plaintiff-Appellee,

v

AMERICAN ATHLETIX, LLC, and DAVISON
COMMUNITY SCHOOLS

Defendants,

and

DANIEL ROMZEK and PHILIP THOM,

Defendants-Appellants.

UNPUBLISHED
October 13, 2022

No.  357805
Genesee Circuit Court
LC No.  19-112719-NO

G. C., by Next Friend CRYSTAL CAVAZOS,

Plaintiff-Appellant,

v

AMERICAN ATHLETIX, LLC, and DAVISON
COMMUNITY SCHOOLS,

Defendants-Appellees,

and

DANIEL ROMZEK and PHILIP THOM,

Defendants.

No.  357966
Genesee Circuit Court
LC No.  19-112719-NO

-1-

Before:  K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals, in Docket No. 357805, defendants Daniel Romzek and Philip Thom appeal by right the trial court's order denying their motion for summary disposition, which was made on the basis of governmental immunity.  In Docket No. 357966, plaintiff appeals by leave granted[1] the same order, challenging the trial court's grant of summary disposition in favor of defendants Davison Community Schools (DCS) and American Athletix, LLC.  We affirm the court's order granting summary disposition in favor of DCS and American Athletix.  And because Romzek and Thom were entitled to governmental immunity, we reverse the trial court's order denying their motion for summary disposition and remand for entry of an order granting summary disposition in their favor.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

On October 21, 2017, Crystal Cavazos and her three-year-old son, GC, attended a football game at Collins Field, which is near Davison Middle School in Davison, Michigan.  They were seated approximately 15 rows up in the bleachers, which correlated to approximately 17 feet above the ground.  There were no riser planks between the seats and floorboards, which meant there were 15-inch gaps throughout the bleachers.  During the game, GC slipped through an opening between the seat and the floorboard, fell to the ground, and suffered serious injuries.

DCS owns and maintains the bleachers where the accident occurred.  DCS's Director of Operations is responsible for, among other things, the maintenance of the grounds of the school district.  Davison High School had utilized Collins Field for its football games until a new stadium, Cardinal Stadium, was built and opened in the fall of 2005.  Romzek, the Director of Operations for the school district at the time, was involved with the new stadium project.  The bleachers at Cardinal Stadium were built with riser planks.  After the new stadium was built, the district decided that there was no need for the wooden, extra seating capacity at Collins Field.  In furtherance of the plan to remove the wooden bleachers, DCS consulted with the architect that designed Cardinal Stadium, THA Architects and Engineering (THA).  Jacqueline Hoist, an architect for THA, met at Collins Field to review the project.  This meeting took place in December 2005, and Hoist prepared notes in conjunction with that meeting.  The project resulted with the wooden bleachers being removed.  No riser planks were added to the remaining aluminum bleachers at Collins Field.

In 2008, Romzek, while still the Director of Operations for the school district, contracted with American Athletix to perform an inspection of the various bleachers in the district, including the bleachers at Collins Field.  A report was issued on May 22, 2008, which covered inspections for seven different "units" of bleachers.  With respect to Collins Field, the report stated under "Immediate Safety Issues":  "Entry stairs sinking, bent seat, no riser planks, safety rails have large

---

[1] *Cavazos v American Athletix, LLC*, unpublished order of the Court of Appeals, entered December 9, 2021 (Docket No. 357966).  This same order also consolidated the two appeals.

gap." Later in the report, under the "General Inspection" section, concerning all seven units of bleachers, it mentioned: "There no [sic] riser planks at Collins Field."

Romzek did not recall making any inquiries to American Athletix regarding the report or its reference to riser planks. Romzek explained that it was his understanding that riser planks were not required on the Collins Field bleachers because there was no such code requirement at the time they were built. He also stated that he was unaware of any requirement to retrofit preexisting bleachers. There is no dispute that neither Romzek nor anyone from DCS did anything about the lack of riser planks after receiving the 2008 report.

Romzek left DCS in 2012, and Thom took over as Director of Operations. Thom stated that he did not see the 2008 report until this litigation arose. In 2013, Thom asked American Athletix to perform another bleacher inspection for the district. Section 3.1 of the report, titled "Planks and Seats," stated, in pertinent part:

> All aluminum, wood seat, foot and riser planks, and end caps were checked for cracks, breaks, or other damage. Damaged boards and missing end-caps represent a safety hazard and could cause tripping, pinching, and sliver accidents as well as weaken the structural integrity of the installation.
>
> The U.S. Consumer Product Safety Commission suggests in its Guidelines for Retrofitting Bleachers that "Any opening between the components in the seating, such as between the footboard, seatboard, and riser, should prevent passage of a 4-inch sphere where the footboard is 30 inches or more above the ground and where the opening would permit a fall of 30 inches or more."
>
> **HS Football Stadium –** Good condition –No Action Needed.
>
> **MS Football Stadium –** Good condition –No Action Needed.
>
> **Baseball Diamond –** Damages, missing end caps –Action Needed.
>
> **Soccer Field –** Damages, missing end caps –Action Needed.
>
> **Tennis Courts –** Damages, missing end caps –Action Needed.

Thom testified that he asked American Athletix for a quote to fix "everything." American Athletix later provided a quote to Thom, but it did not include any work for adding riser planks. It is undisputed that no riser planks were added to the Collins Field bleachers after the 2013 inspection, and there is no evidence of any other "professional" inspections having taken place between 2013 and the 2017 accident.

Plaintiff filed this action on May 13, 2019, alleging three counts: negligence against American Athletix, public-building defect against DCS, and gross negligence against Thom and Romzek.

DCS, Thom, and Romzek moved for summary disposition on the basis of governmental immunity. DCS argued that the public-building exception to governmental immunity did not apply

to bleachers, because bleachers are not a "building." Alternatively, DCS argued that the hazard at issue involved a design defect, which falls outside the purview of the duty imposed by MCL 691.1406. For their part, Thom and Romzek argued that their conduct did not rise to the level of gross negligence, and that liability could not attach to them because their conduct was not the proximate cause of GC's injuries.

American Athletix moved for summary disposition under MCR 2.116(C)(10). American Athletix argued that plaintiff's claim against it sounded in premises liability and that, as a result, it could not be liable because it was not in control of the property. American Athletix alternatively argued that any negligence claim necessarily failed because it did not owe a duty to GC.

The trial court granted summary disposition in favor of American Athletix, ruling that plaintiff's claim against it sounded in premises liability and because American Athletix was not in control of the premises, it was entitled to summary disposition. The court further determined that to the extent that the claim sounded in ordinary negligence, the claim failed because American Athletix owed no duty to GC. The trial court also granted summary disposition in favor of DCS. The court found that for purposes of the motion, it was considering the bleachers to be a public building. However, it held that DCS was nevertheless entitled to summary disposition because the gap at issue in the bleachers was a "design defect," which is not included under the public-building exception to governmental immunity.

The trial court, however, denied the motion for summary disposition as to Romzek and Thom. The court determined that viewing the evidence in a light most favorable to plaintiff, there was a genuine question of material fact whether Romzek and Thom were grossly negligent. The court also rejected Romzek and Thom's argument that there was no question of fact whether their actions were the proximate cause of GC's injuries. These appeals followed.

## II. DOCKET NO. 357805—ROMZEK'S AND THOM'S APPEAL

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).[2] A party is entitled to summary disposition under MCR 2.116(C)(7) if, among other things, the plaintiff's claims are "barred because of immunity granted by law." When considering a motion brought under this subrule, the court considers all the affidavits, depositions, admissions, or other documentary evidence submitted by the parties in a light most favorable to the plaintiff. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). "The contents of the complaint are accepted as true unless contradicted by the evidence provided." *Odom*, 482 Mich at 466 (quotation marks and citation omitted). Although the question of whether a governmental employee's conduct constituted gross negligence generally is a question of fact, "if reasonable minds could not differ,

---

[2] Although DCS, Thom, and Romzek cited MCR 2.116(C)(7), (8), and (10) in their motion for summary disposition, MCR 2.116(C)(7) is the pertinent subrule because their arguments were based on governmental immunity.

a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007).

## B. DISCUSSION

Romzek and Thom argue that the trial court erred when it denied their motion for summary disposition on the basis of governmental immunity. In particular, they contend that there was no genuine issue of material fact whether their conduct rose to the level of gross negligence, and no fact-finder could conclude that their conduct was the proximate cause of GC's injuries. We agree that the trial court erred by denying the motion for summary disposition with respect to both Romzek and Thom because a reasonable fact-finder could not find that their conduct rose to the level of gross negligence.

The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, states, in pertinent part:

[E]ach officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). In *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004), this Court explained:

Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.

The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective

observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge.

Here, the trial court concluded that despite being informed that the lack of riser planks presented "an immediate safety concern, Romzek and Thom did nothing to rectify the situation." Moreover, the court found there was "no evidence that they ever considered taking any precautions or measures to attend to safety." Thus, the court concluded there was "a genuine issue of material fact [whether] Romzek and Thom demonstrated a substantial lack of concern for whether their conduct would cause injury to Plaintiff."

As an initial matter, the trial court improperly treated Romzek and Thom as a collective entity because the court imputed the actions and knowledge of Romzek to Thom and vice versa. Moreover, the court's statement that both Romzek and Thom were "informed on three separate occasions" about the bleacher gaps is not supported by the evidence. The three purported instances occurred in 2005, 2008, and 2013. However, there was no evidence submitted to the trial court that Romzek or Thom were privy to the 2005 communication, no evidence that Thom ever saw the 2008 report before the accident occurred, and Romzek was no longer employed by DCS in 2013 when Thom received that report. Thus, when considering whether Romzek or Thom were grossly negligent, the only pertinent documentation is the 2008 report, which applies only to Romzek, and the 2013 report, which only applies to Thom.

The trial court erred by concluding that there was a material question of fact whether Romzek's and Thom's actions constituted gross negligence. It is undisputed that Romzek did not do anything to address the lack of riser planks after receiving the 2008 report from American Athletix. But to rise to the level of gross negligence, the actor's conduct must be "so reckless as to demonstrate a substantial lack of concern for whether an injury results," MCL 691.1407(8)(a), and it must appear that "the actor simply did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich App at 90. The facts presented to the trial court do not raise a genuine issue of fact that Romzek demonstrated such a lack of care. While it is undisputed that Romzek knew there were gaps between the Collins Field floorboards and seat boards, and that he did not take any action to retrofit the bleachers with riser planks, it was his understanding that old bleachers, such as at Collins Field, did not have to be retrofitted to be code compliant. Romzek was not sure from whom he learned this "grandfathering" concept, but he thought he gained it through consultations with design and engineering individuals, such as Hoist. Although it is not known if Hoist was the person who relayed this information to Romzek, it is notable that Hoist held the same belief that Collins Field did not need to be retrofitted with riser planks to be code compliant unless the bleachers themselves were being altered or were otherwise part of a construction renovation project.

In our view, the notation in the 2008 report that the lack of risers constituted an "Immediate Safety Issue[]" is insufficient to show that Romzek's failure to implement risers was grossly negligent. Something being a "safety issue" is not the same as a declaration that it was likely that someone was going to get hurt if no action was taken. The report does not mention the

consequence of having no risers.[3] In short, the report, by merely providing a vague "safety issue" warning and referencing "no riser planks," with no other details, adds nothing. Anyone involved with or interacting with the Collins Field bleachers would have known or should have known that there were large gaps present, through which a small child could fall. Romzek, or anyone else, did not need a report to tell them that. Therefore, the question becomes whether Romzek, knowing the risk, can be considered grossly negligent by failing to add risers to the bleachers.

Romzek stated he grew up in Davison, attended school there, and was very familiar with the Collins Field bleachers. In fact, Romzek personally had sat in those bleachers "dozens and dozens and dozens of times." Romzek knew, as well as anyone else who visited Collins Field, that the bleachers contained gaps between the seats and floorboards. Significantly, even with the existence of these gaps for decades, through his time in the community and as Director of Operations, Romzek was not aware of any injuries ever occurring with those bleachers.

With Romzek relying on his understanding that the bleachers were compliant with any applicable codes[4] and his knowledge that the bleachers had not caused any injuries, it is hard to envision how a reasonable juror could conclude that Romzek's failure to implement riser planks showed that he "simply did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich App at 90. Romzek could have acted to make the bleachers safer. However, "saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent." *Id*. Therefore, although there may be a question of fact regarding whether Romzek was negligent by failing to address the gaps in the bleachers, reasonable minds could not differ as to whether his conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted. Thus, we conclude that the trial court erred when it denied the motion for summary disposition with respect to Romzek.

The trial court also erred by denying the motion for summary disposition with respect to Thom, who presents an even easier case than Romzek. Thom, having gone to school in Davison and worked at DCS for decades, was fully aware that the Collins Field bleachers had gaps between the seats and floorboards. The report that Thom received in 2013 specifically stated that, with regard to the planks and seats, there were no issues and that "[n]o [a]ction" was needed.[5] And

---

[3] We recognize that the lack of risers between the seatboards and floorboards present a risk that small children could fall through, which tragically happened. The consequence is obvious and perhaps does not need to be expressly stated. But in order for the *report* to be pertinent for this issue, it needed to present something that laymen were not already aware of.

[4] Whether Romzek's understanding of the code was correct is not legally relevant because what matters was his state of mind.

[5] As discussed in the context of Romzek, the reports add little to this analysis because both Romzek and Thom were already aware that the bleachers contained gaps and had no riser planks. They did not require a report informing them that a small child could fit through the gaps. But in Thom's case, the report is even less compelling because it explicitly instructs Thom that "[n]o [a]ction" was "[n]eeded."

when American Athletix was asked to supply a quote to fix all of the identified issues, the resulting quote did not include any information about adding riser planks. Thom, in authorizing the quote from American Athletix to correct "everything," cannot thereby be deemed to have exhibited a lack of care about the safety of others. Like Romzek, Thom was also unaware of any injuries associated with the bleachers. In short, a reasonable juror could not find that Thom's failure to add risers demonstrated that he "did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich App at 90.

Plaintiff's reliance on the entry in the 2013 report citing the USCPSC guidelines is unpersuasive. First, from the very text of the report, the verbiage shows that such retrofitting is not required (or even strongly encouraged). The relevant section states: "The [USCPSC] *suggests* in its *Guidelines* for Retrofitting Bleachers that . . . ." (Italics emphasis added.) Both the words "suggest" and "guidelines" are strongly indicative of nonrequired action. Moreover, although the report quotes the USCPSC guidelines, there is no affirmative statement that any of the listed bleachers, including Collins Field, was in violation of those guidelines. Indeed, under the cited portion of the guidelines, the report states that the Collins Field bleachers are in "[g]ood condition" and "[n]o [a]ction [n]eeded." Thus, viewing this evidence in a light most favorable to plaintiff, the report, including the citation to the USCPSC guidelines, indicate it was not necessary in American Athletix's opinion to retrofit the bleachers. Thom, acting consistently with this expert opinion, did not demonstrate the requisite lack of care for others' safety.

There being no genuine issue of fact that Romzek's and Thom's conduct did not amount to gross negligence, we conclude that the trial court erred when it denied summary disposition in their favor.[6]

### III. DOCKET NO. 357966—PLAINTIFF'S APPEAL

### A. STANDARDS OF REVIEW

DCS moved for summary disposition under MCR 2.116(C)(7). As relevant here, a party is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are "barred because of immunity granted by law." When considering a motion brought under this subrule, the court considers all the affidavits, depositions, admissions, or other documentary evidence submitted by the parties in a light most favorable to the plaintiff. *Moraccini*, 296 Mich App at 391. "The contents of the complaint are accepted as true unless contradicted by the evidence provided." *Odom*, 482 Mich at 466 (quotation marks and citation omitted).

American Athletix moved for summary disposition under MCR 2.116(C)(10).[7] "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Fashho v Liberty Mut*

---

[6] Romzek and Thom also argue that the evidence presented cannot support a finding that their actions were the proximate cause of GC's injuries. Because we conclude that no reasonable juror could conclude that their conduct amounted to gross negligence, we need not address this issue.

[7] American Athletix moved for summary disposition under MCR 2.116(C)(8) and (10), and the trial court did not specify under which subrule it granted the motion. Because American Athletix

-8-

*Ins Co*, 333 Mich App 612, 616; 963 NW2d 695 (2020) (quotation marks and citation omitted). In evaluating such a motion, "a trial court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . ." *Mich Assoc of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citation omitted). A motion under (C)(10) is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

## B. DISCUSSION

## 1. CLAIMS AGAINST AMERICAN ATHLETIX

Plaintiff argues that the trial court erred when it granted summary disposition in favor of American Athletix. We disagree.

Plaintiff first contends that the trial court erred by dismissing a purported claim of premises liability when she alleged negligence, not premises liability. However, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). "Michigan law distinguishes between claims arising from ordinary negligence claims premised on a condition of the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence . . . ." *Id*.

For premises-liability cases, "liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Id*. Indeed, "premises liability is conditioned upon the presence of both possession and control over the land because the person in possession is in a position of control and normally best able to prevent any harm to others." *Morelli v Madison Heights*, 315 Mich App 699, 702-703; 890 NW2d 878 (2016) (quotation marks and citation omitted). "Unlike a claim of premises liability, a claim of ordinary negligence is based on the underlying premise that a person has a duty to conform his or her conduct to an applicable standard of care when undertaking an activity." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 624; 971 NW2d 716 (2021).

Plaintiff's complaint alleged many ways in which American Athletix purportedly breached its duties. For example, plaintiff alleged that American Athletix inadequately carried out its inspections, which implicates ordinary negligence because it speaks to "defendant's ability to conform to a particular standard of care." *Id*. But other allegations in the complaint assert that American Athletix breached its duty by "[f]ailing to undertake repairs and/or maintenance," "[f]ailing to install vertical riser planks . . . to prevent invitees from falling though," and "[f]ailing to maintain" the bleachers. These latter allegations go beyond American Athletix's duty to reasonably carry out its inspections. Indeed, plaintiff's reference to "invitees" underscores that

relied on materials outside the pleadings, consideration under MCR 2.116(C)(10) is proper. See *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015).

these aspects of plaintiff's claim sound in premises liability. See *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000) (listing "invitee" as one of the three categories for different standards of care owed in premises-liability actions). Furthermore, because only the entity that is actually in control of the land would have the authority to make repairs or conduct maintenance, these aspects sound in premises liability. See *Buhalis*, 296 Mich App at 692 ("If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence . . . ."); *Anderson v Wiegand*, 223 Mich App 549, 555; 567 NW2d 452 (1997) ("[P]remises liability is conditioned upon the presence of both possession and control over the land because the person in possession is in a position of control and normally best able to prevent any harm to others.").

The trial court determined that because GC's injuries arose from a condition on the land, i.e., the condition of the permanently affixed bleachers, the claim sounded in premises liability. However, this Court in *Jeffrey-Moise* stated that when analyzing whether the plaintiff's claim sounded in ordinary negligence or premises liability, the Court must look at the source of the defendant's duty. *Jeffrey-Moise*, 336 Mich App at 625. In that case, we concluded that "[b]ecause [the] plaintiff's claim is based on [the] defendant's duty as the possessor of the land on which she fell and not on defendant's ability to conform to a particular standard of care, we treat [the] plaintiff's claim as one of premises liability." *Id.* In the instant case, looking at plaintiff's complaint as a whole, American Athletix's alleged duty was not based on its status as a possessor or owner of the land; instead, its alleged duty was to perform its inspections reasonably and with due care toward GC.

Looking at the complaint as a whole, plaintiff has alleged both ordinary negligence and premises liability against American Athletix. But because there is no question of fact that American Athletix was not the possessor or otherwise had any control over the premises, summary disposition was proper with respect to the premises-liability aspects of plaintiff's claim.

We turn, then, to the issues regarding negligence. Plaintiff contends that the trial court erred when it determined that, even if negligence applied, the claim failed for lack of duty. We disagree.

To demonstrate negligence, a plaintiff must satisfy the following elements: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020) (quotation marks and citation omitted). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). A duty of care may arise by statute, by a contractual relationship, or under the common law. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660-661; 822 NW2d 190 (2012). However, if there is no relationship between the parties, "no duty c[an] be imposed on the defendant." *In re Certified Question from Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 507; 740 NW2d 206 (2007).

-10-

There is no dispute that American Athletix had no relationship with plaintiff or GC.[8] Instead, American Athletix was contracted by DCS to inspect its bleachers. A party's contractual promise ordinarily does not establish a duty of care to a third party in tort. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 170; 809 NW2d 553 (2011). Instead, courts

> should analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a "separate and distinct" mode of analysis. Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie. [*Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004).]

In doing so, the focus is not on whether the defendant's conduct was separate and distinct from the obligations required by the contract; the focus instead is on whether a particular defendant owes any duty at all to a particular plaintiff, which in turn generally requires an inquiry into whether, aside from the contract, a defendant is under any legal obligation to act for the benefit of the plaintiff. *Loweke*, 489 Mich at 168. "Thus, in determining whether an action in tort will lie," the focus is "on whether any legal duty independent of the contract existed." *Id.*, citing *Fultz*, 470 Mich at 466. In this case, the trial court did not err when it granted American Athletix's motion because that entity did not owe GC a duty that was separate and distinct from the contractual obligations it owed to DCS.

Plaintiff asserts that American Athletix owed GC a common-law duty under the Restatement Torts, 2d, § 324A, which states in relevant part:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> * * *

> (b) he has undertaken to perform a duty owed by the other to the third person.

In *Fultz*, the Michigan Supreme Court cautioned that § 324A is not to be invoked uncritically or without regard to the limiting principles in our caselaw. *Fultz*, 470 Mich at 464-465; see also *Fultz*, 470 Mich at 470 (KELLY, J., dissenting) (stating that the *Fultz* majority rejected ¶ 324A(b) of the Restatement).

The essence of plaintiff's negligence claim is that American Athletix should have performed its contractual obligations better, i.e., it should have recognized the large gap in the bleachers and clearly conveyed this as a safety issue to DCS. But these actions are rooted in

---

[8] Indeed, GC was not even born at the time American Athletix conducted the inspections in 2008 and 2013.

-11-

American Athletix's contractual obligations. In other words, ignoring the contract, with absolutely no relationship between American Athletix and GC, there was no separate and distinct duty for American Athletix to have acted for plaintiff's or GC's benefit. Although there is a separate and distinct duty "to avoid harm" when one carries out a contractual obligation, see *Loweke*, 489 Mich at 170, that duty is not implicated because American Athletix did not create any new hazard that previously did not exist. See *Hill*, 492 Mich at 672 ("[O]ne breaches a duty that is 'separate and distinct' from the contract when it creates a 'new hazard.' "); *Fultz*, 470 Mich at 469 (holding that no separate and distinct duty existed because the defendant's failure to carry out its contractual duties created no new hazard to the plaintiff). It is undisputed that American Athletix did not do anything to the bleachers themselves to make the bleacher gaps larger or otherwise more hazardous.

We therefore affirm the grant of summary disposition in favor of American Athletix because neither the premises-liability nor negligence claims were supported in law or fact.

## 2. CLAIM AGAINST DCS

Plaintiff also argues that the trial court erred when it granted summary disposition in favor of DCS on the basis of governmental immunity. We disagree.

The GTLA provides that a governmental agency "is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). However, an exception to governmental immunity is the public-building exception:

> Governmental agencies have the obligation to *repair and maintain* public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. [MCL 691.1406 (emphasis added).]

Plaintiff argues that the trial court erred when it concluded that the public-building exception to immunity did not apply because the lack of riser planks on the bleachers constituted a design defect, which falls outside a governmental agency's duty to "repair and maintain" its public buildings. The Michigan Supreme Court has held that the requirement to "repair and maintain" does not include the duty to correct design defects. *Renny v Dep't of Transp*, 478 Mich 490, 500-501; 734 NW2d 518 (2007). The Court explained:

> [The first sentence of MCL 691.1406] unequivocally establishes the duty of a governmental agency to "repair and maintain" public buildings. Neither the term "repair" nor the term "maintain," which we construe according to their common usage, encompasses a duty to design or redesign the public building in a particular manner. "Design" is defined as "to conceive; invent; contrive." By contrast, "repair" means "to restore to sound condition after damage or injury." Similarly, "maintain" means to "to keep up" or "to preserve." Central to the definitions of

-12-

"repair" and "maintain" is the notion of restoring or returning something, in this case a public building, to a prior state or condition. "Design" refers to the initial conception of the building, rather than its restoration. "Design" and "repair and maintain," then, are unmistakably disparate concepts, and the Legislature's sole use of "repair and maintain" unambiguously indicates that it did not intend to include design defect claims within the scope of the public building exception. [*Renny*, 478 Mich at 500-501 (citations omitted).]

In sum, because the public-building exception excludes claims of design defects, to avoid governmental immunity, a plaintiff must establish that the defective condition was the result of the failure to repair or maintain. In *Tellin v Forsyth Twp*, 291 Mich App 692, 705-706; 806 NW2d 359 (2011), this Court attempted to explain the differences between what constitutes a "design defect" and what constitutes "repair and maintenance":

A design defect would appear to consist of a dangerous condition inherent in the design itself, such as its characteristics, functioning, and purpose. . . .

In contrast, a failure to repair or maintain appears to consist of something *caused by extrinsic circumstances*, such as a malfunction, deterioration, instability, or a fixture that is improperly secured or otherwise improperly constructed or installed. Reparative or preventative measures may also supplement the existing structure to preserve the existing design. An action could initially be a design decision, but subsequent improper installation, malfunction, deterioration, or instability could later transform this decision into a failure to repair or maintain. [Emphasis added.]

Plaintiff states in her brief on appeal that the duty to maintain and repair "necessarily involves the duty to ensure compliance with all applicable codes when bleachers are modified and/or altered." There was, however, no evidence presented to the trial court that the Collins Field bleachers were ever modified or altered after the applicable building code was modified to require no gaps of greater than four inches. Plaintiff concedes that the bleachers complied with the applicable code when they were built. Plaintiff, however, maintains that the removal of the wooden portions of the bleachers in 2006 triggered the requirement to bring the bleachers to present-day code standards. This assertion must fail. The evidence was uncontroverted that the wooden bleachers that were removed in 2006 were separate units that simply sat near the central bleachers at issue and did not touch or otherwise interact with them. Therefore, the removal of the wooden bleachers did not otherwise alter, modify, or affect the central aluminum bleachers. Consequently, there was no modification or alteration to "trigger" any compliance with current codes.

Moreover, applying the principles from *Renny* and *Tellin* dictates that plaintiff's claim is a one for a design defect. The gaps in the bleachers are "condition[s] inherent in the design itself," which indicates that it is a design defect. *Tellin*, 291 Mich App at 705. Further, the gaps in the bleachers were not caused by extrinsic circumstances; they had been there ever since the aluminum bleachers were constructed decades ago. Consequently, the essence of the claim is for a design defect, not the failure to repair or maintain.

Plaintiff also asserts that the current code requires that all existing bleachers must comply with the code provision limiting gaps to less than four inches, regardless of the presence of any modifications. Thus, plaintiff argues that because the duty to repair or maintain encompasses the duty to comply with applicable codes, DCS violated that statutory duty when it failed to address the large gaps in the bleachers. We find this argument unpersuasive.

In *Renny*, the Michigan Supreme Court stressed that "[c]entral to the definitions of 'repair' and 'maintain' is the notion of restoring or retuning something, in this case a public building, to a prior state or condition." *Renny*, 478 Mich at 501. In the present case, installing a new feature, such as riser planks, even if done in the context of complying with any regulation or code, undoubtedly is not "restoring or returning" the bleachers to "a prior state or condition." Consequently, irrespective of any purported code violation, plaintiff's allegation involves a design defect and the trial court properly granted summary disposition in favor of DCS on the basis that a design defect claim does not fall within the public-building exception.

We affirm the grant of summary disposition in favor of defendants American Athletix and DCS, reverse the denial of summary disposition in favor of Romzek and Thom, and remand for entry of an order granting summary disposition in their favor. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron